```
                    UNITED STATES DISTRICT COURT
                     MIDDLE DISTRICT OF FLORIDA
                        FORT MYERS DIVISION


ROBERT LOVETTE,

                 Plaintiff,


vs.                                     Case No.   2:04-cv-522-FtM-29SPC


HAPPY HOOKER II, In Rem, CAPT. TIM
WICBURG d/b/a HAPPY HOOKER CHARTERS,
and   ROGER   PLATH/SALT   WATER
ADVENTURES, LLC, alter egos,

                 Defendants.
_____
```

## OPINION AND ORDER

This matter comes before the Court on Defendants Salt Water Adventures' and Happy Hooker II's Amended Motion for Summary Judgment (Doc. #76) filed on November 21, 2005. Plaintiff filed his Response to Salt Water Adventures' and Happy Hooker II's Amended Motion for Summary Judgment on December 4, 2005. (Doc. #91).

Also before the Court is Defendant Salt Water Adventures's Motion to Dismiss Second Amended Complaint (Doc. #71) filed on November 18, 2005. Plaintiff filed his Response to Salt Water Adventures' Motion to Dismiss Second Amended Complaint on November 21, 2005. (Doc. #74). In the Motion to Dismiss, defendant Salt Water Adventures seeks to dismiss Count III for failure to state a claim for maintenance and cure. Having raised the same issue in

the subsequent summary judgment motion, the Court will deny as moot the Motion to Dismiss, and the merits of Count III will be addressed in the context of the summary judgment motion.

**I.**

Summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue at to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" if there is sufficient evidence such that a reasonable jury or the factfinder at trial could return a verdict for either party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if it may affect the outcome of the suit under governing law. Id. The moving party bears the burden of identifying those portions of the pleadings, depositions, answers to interrogatories, admissions, and/or affidavits which it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Hickson Corp. v. Northern Crossarm Co., Inc., 357 F.3d 1256, 1259-60 (11th Cir. 2004).

To avoid the entry of summary judgment, a party faced with a properly supported summary judgment motion must come forward with extrinsic evidence, i.e., affidavits, depositions, answers to interrogatories, and/or admissions, which are sufficient to establish the existence of the essential elements to that party's case, and the elements on which that party will bear the burden of proof at trial. Celotex Corp., 477 U.S. at 322; Hilburn v. Murata

Elecs. N. Am., Inc., 181 F.3d 1220, 1225 (11th Cir. 1999). In ruling on a motion for summary judgment, if there is a conflict in the evidence, the non-moving party's evidence is to be believed and all reasonable inferences must be drawn in favor of the non-moving party. Shotz v. City of Plantation, Fla., 344 F.3d 1161, 1164 (11th Cir. 2003).

**II.**

Viewing the facts in the light most favorable to plaintiff, the Court finds the following summary judgment facts: On March 16, 2003, plaintiff Robert Lovette allegedly sustained injuries while on board the M/V Happy Hooker II, a 42-foot 1975 Hatteras fishing vessel, which was owned by defendant Salt Water Adventures, a Minnesota limited liability company, and was operated by defendant Captain Tim Wicburg. Defendant Roger Plath is the sole member of Salt Water Adventures, which holds a first preferred ship mortgage on the vessel. A certificate of liability insurance was issued for the vessel in the name of Plath individually.

On March 1, 2002, Salt Water Adventures agreed to lease M/V Happy Hooker II to Wicburg, who operated the vessel as a commercial fishing charter (the Vessel Lease Agreement). Under the Vessel Lease Agreement, Salt Water Adventures chartered the vessel to Wicburg, Happy Hookers Charters, and James Eugene Wicburg for the term beginning March 1, 2002 through February 28, 2005. According to the terms of the Vessel Lease Agreement, Wicburg and Salt Water Adventures were responsible "for maintaining appropriate insurance

for their respective interests in the Premises and property located on the Premises." (Doc. # 56, Exh. 7). Salt Water Adventures retained its right to unlimited access to the vessel. (Id.).

In addition to the Vessel Lease Agreement, Wicburg and Salt Water Adventures had an understanding that, if Wicburg made any profits from the operation of the vessel, Wicburg would give a portion of the profits to Salt Water Adventures as lease payments. (Doc. #56, Exh. 2, p. 28). Wicburg, however, never made any profits. (Doc. #56, Exh. 2, p. 34). Wicburg also was responsible for maintenance of the vessel, repair costs, dockage fees, and all crew-related expenses. (Doc. #56, Exh. 2, pp. 14, 28). Wicburg had sole discretion in selecting the crew. Neither Salt Water Adventures nor Plath had decision-making authority with respect to crew members. (Doc. #56, Exh. 2, p. 54). When Wicburg could not afford the costs of necessary repairs, Salt Water Adventures paid for those repairs costs. (Doc. #56, Exh. 2, pp. 14, 17-19).

Salt Water Adventures exercised no control over Wicburg's charter operations. (Doc. #56, Exh. 2, p. 55). In addition, Salt Water Adventures did not have any day-to-day decision-making authority with respect to which repairs would be made to the vessel. (Doc. #56, Exh. 2, pp. 57-58).

Wicburg hired Lovette as a mate on the vessel approximately one year prior to the incident. (Doc. #56, Exh. 8, pp. 16-17, 19-20). Lovette conceded that Plath and Salt Water Adventures were not Lovette's employer. (Id. at 19-20).

-4-

On March 16, 2003, Lovette worked as a mate on the subject vessel on which Wicburg was the captain. During this fishing charter trip, Lovette injured his right knee in an attempt to operate the vessel's anchor. Lovette alleges that the absence of steps upon which he could use to reach the anchor release mechanism was the cause of the accident resulting in his injury.

In the Second Amended Complaint, Lovette brings this action alleging the following causes of action: (1) Jones Act Negligence against Wicburg (Count I); (2) unseaworthiness claim against Happy Hooker II, in rem, Plath, Salt Water Adventures, and Wicburg (Count II); and (3) maintenance and cure claim against Happy Hooker II, in rem, Plath, Salt Water Adventures, and Wicburg (Count III). Defendants Plath and Salt Water Adventures move for summary judgment as to Counts II and III.

### III.

**A.  Count II – Owner Liability for Unseaworthiness**

Defendants Plath and Salt Water Adventures contend that the Vessel Lease Agreement between Salt Water Adventures and Wicburg constitutes a bareboat charter, that the vessel was delivered to Wicburg in seaworthy condition, and that therefore as a matter of law the vessel owner Salt Water Adventures cannot be held liable for the unseaworthiness claim. Lovette responds that neither the express terms of the Vessel Lease Agreement nor the actions of the chartering parties show that the parties entered into a bareboat

charter. Lovette further argues that the vessel owner remains liable for the vessel's unseaworthiness even if there is a bareboat charter.

The issue of whether an owner who delivers a vessel in seaworthy condition to a charterer pursuant to a bareboat charter[1] is liable for an unseaworthiness claim by a third party has split the circuits.  The Fifth Circuit stated:  "A bareboat or demise charter (hereinafter called a bareboat charter), whereby the charter assumes 'full possession and control of the vessel," ... constitutes the only form of charter that purports to invest temporary powers of ownership in the charterer and, therefore, constitutes the only conceivable basis on which the vessel owner could seek to escape liability for the unseaworthiness of his vessel."  Baker v. Raymond Int'l, Inc., 656 F.2d 173, 181-82 (5th Cir. 1981)(internal citations omitted).  However, the Fifth Circuit in Baker found that, even in the case of a bareboat charter, the owner remains liable for the unseaworthiness condition at the time of the charter.  See id.  Contrary to the Fifth Circuit, other

---

[1] A "charter" is an arrangement whereby one person (the "charterer") becomes entitled to the use of the whole of a vessel belonging to another (the "owner"). Walker v. Braus, 995 F.2d 77, 80 (5th Cir. 1993).  Under a "bareboat" or "demise" charter, the full possession and control of the vessel is transferred to the charterer. Guzman v. Pichirilo, 369 U.S. 698, 699 (1962).  The stated consideration for a demise charter is payable periodically...."  Walker, 995 F.2d at 81.  Additionally, "the vessel is transferred without crew, provisions, fuel or supplies, i.e., 'bareboat'; and when, and if, the charterer operates the vessel he must supply also such essential operating expenses."  Id.

circuits have found that a demise charterer is the liable party for the unseaworthiness condition of the vessel, and the vessel owner is absolved from such liability.  See Matute v. Lloyd Berm. Lines, Ltd., 931 F.2d 231, 235 n.2 (3d Cir. 1991), overruled on other grounds, Neely v. Club Med Mgmt. Servs., 63 F.3d 166, 178 (3d Cir. 1995); see also McAleer v. Smith, 57 F.3d 109, 112 (1st Cir. 1995).  This issue remains unresolved in the Eleventh Circuit.  The Court finds it unnecessary to resolve this legal issue because there are material issues of disputed facts as to whether a bareboat charter existed in this case.

Courts generally presume that the owner does not mean to put his vessel into the possession and control of the charterer.  Guzman, 369 U.S. at 700.  This presumption places a heavy burden on the party who attempts to show that the owner of the vessel has been relieved of his legal obligations as owner.  Id.  Courts are reluctant to find a demise when the dealings between the parties are consistent with any lesser relationship.  Id.  To establish a demise charter, the charter requires "complete transfer of possession, command, and navigation of the vessel from the owner to the charterer."  Walker, 995 F.3d at 81.  See also Guzman, 369 U.S. at 699 ("To create a demise the owner of the vessel must completely and exclusively relinquish possession, command, and navigation thereof to the demisee.")(internal quotation marks and citations omitted).

In reviewing the Vessel Lease Agreement, the Court finds that the unambiguous terms of the charter do not establish a demise charter. The term of the agreement is stated for a specific period of time from March 1, 2002 through February 28, 2005. (Doc. # 56, Exh. 7). In addition, a clause in the charter allows the owner of the vessel to have unlimited access to the vessel. (Id.). Clearly, this provision is contrary to the demise charter's requirement that the demisee has exclusive possession over the vessel. Moreover, Wicburg did not provide insurance for the vessel because he believed that the owner of the vessel would provide such insurance. (Doc. #56, Exh. 2, pp. 33-34). As further evidence that Wicburg did not maintain complete responsibility over the vessel pursuant to a bareboat charter, Salt Water Adventures sent funds to Wicburg as payment for repairs on the vessel on three separate occasions. (Doc. #56, Exh. 2, pp. 17-19). Based on the record, the Court finds that Plath and Salt Water Adventures have failed to overcome the presumption that the subject agreement is not a bareboat charter. There remains genuine issues of material fact regarding whether the Vessel Lease Agreement and its operation constituted a demise charter in light of the terms of the agreement and the behavior of the contracting parties. Thus, the Motion for Summary Judgment as to Count II is due to be denied.

**B.   Count III – Owner Liability for Maintenance and Cure**

Plath and Salt Water Adventures contend that it is not personally liable for maintenance and cure because the right to

maintenance and cure arises solely from the contract of employment; that the same test used to determine whether there is an employer-employee relationship under the Jones Act must be used to determine employer-employee status for purposes of maintenance and cure; and that, since the Court found that it is not Lovette's employer for Jones Act purposes, it follows that Salt Water Adventures is not Lovette's employer for purposes of maintenance and cure liability. Lovette responds that Wicburg acted as an agent for Plath and Salt Water Adventures when Wicburg hired Lovette, that Plath, through Salt Water Adventures, was Lovette's employer, and thus Plath owes Lovette a duty to provide maintenance and cure.

"The duty to pay maintenance is imposed by general maritime law." Frederick v. Kirby Tankships, Inc., 205 F.3d 1277, 1290 (11th Cir. 2000)(citing Cortes v. Baltimore Insular Line, Inc., 287 U.S. 367, 370-71 (1932)). "The right of maintenance consists of the right to payments sufficient to provide a seaman with food and lodging comparable to the kind received aboard ship. Id. at 1290-91 (citing Calmar Steamship Corp. v. Taylor, 303 U.S. 525, 528 (1938)). "This duty attaches once the seaman enters the service of a ship." Id. at 1291 (citing De Zon v. American President Lines, 318 U.S. 660, 667 (1943)).

"A seaman's right to maintenance and cure is implicit in the contractual relationship between the seaman and his employer, and is designed to ensure the recovery of these individuals upon injury or sickness sustained in the service of the ship." Nichols v.

Barwick, 792 F.2d 1520, 1523 (11th Cir. 1986). "Maintenance and cure are due without regard to the negligence of the employer or the unseaworthiness of the ship." Id. "Maintenance is a per diem living allowance, paid so long as the seaman is outside the hospital and has not reached the point of 'maximum cure.' Cure involves the payment of therapeutic, medical, and hospital expenses not otherwise furnished to the seaman, again, until the point of 'maximum cure.'" Id. at 1523-24.

It is true that an employer/employee relationship is a necessary antecedent to a Jones Act negligence claim, Cosmopolitan Shipping Co. v. McAllister, 337 U.S. 783 (1949), and to a "maintenance and cure" claim, Cortes, 287 U.S. at 371. The existence of such an employer/employee relationship must be determined under maritime law, United States v. Webb, Inc., 397 U.S. 179 (1970), and the burden of proof is on the seaman to establish the employment relationship. Osland v. Star Fish & Oyster Co., 118 F.2d 772 (5th Cir. 1941), cert. denied, 314 U.S. 615 (1941). "The law is clear that in both categories of cases – Jones Act, and maintenance and cure – the owner of the vessel is the employer unless the vessel is held under a demise charter." Stevens v. Seacoast Co., Inc. and M/V Elena S, 414 F.2d 1032, 1037 (5th Cir. 1969).

For the reasons stated above, the Court concludes that Plath and Salt Water Adventures did not overcome the presumption against finding a demise charter between the contracting parties. The

Court recognizes that "[m]aintenance, cure, and wages remain, however, the particular responsibility of the employer, unlike the liability for unseaworthiness, which arises directly from ownership of the vessel." Baker, 656 F.2d at 185. Moreover, it is not uncommon that the seaman is employed by a person other than the shipowner. In those instances, courts have not held the shipowner to be personally liable. Nevertheless, because genuine issues of material fact exist as to the type of charter between Salt Water Adventures and Wicburg, the Court cannot determine the relationship between Salt Water Adventures and Lovette at this stage. Thus, the Amended Motion for Summary Judgment as to Count III is due to be denied.

### III.

Defendants contend that Lovette has not carried his burden in showing that Salt Water Adventures was created for a fraudulent or misleading purpose, and without a showing of such improper conduct, the Court cannot disregard this corporate entity and consider Salt Water Adventures as Plath's alter-ego. In response, Lovette argues that Salt Water Adventures is Plath's alter-ego because (1) the insurance policy for the vessel names Plath as the policy holder and not Salt Water Adventures, and (2) Plath is the sole principal of Salt Water Adventures, LLC, which in turn possesses the vessel as the sole asset of the corporation.

Both parties claim that Florida law should apply to determine the issue of whether to disregard the corporate entity. "[W]hen

neither statutory nor judicially created maritime principles provide an answer to a specific legal question, courts may apply state law provided that the application of state law does not frustrate national interests in having uniformity in admiralty law." All Underwriters v. Weisberg, 222 F.3d 1309, 1312 (11th Cir. 2000)(quoting Coastal Fuels Mktg., Inc. v. Florida Express Shipping Co., Inc., 207 F.3d 1247, 1251 (11th Cir. 2000)); see also Offshore Logistics, Inc. v. Tallentire, 477 U.S. 207, 222-23 (1986) ("[T]he extent to which state law may be used to remedy maritime injuries is constrained by a so-called 'reverse- Erie' doctrine which requires that the substantive remedies afforded by the States conform to governing federal maritime standards."); Steelmet, Inc. v. Caribe Towing Corp., 779 F.2d 1485, 1488 (11th Cir. 1986) ("One must identify the state law involved and determine whether there is an admiralty principle with which the state law conflicts, and, if there is no such admiralty principle, consideration must be given to whether such an admiralty rule should be fashioned. If none is to be fashioned, the state rule should be followed."). Because there is no admiralty counterpart to Florida's piercing the corporate veil doctrine, the Court applies Florida law below.

The Florida courts have imposed a strict standard upon those wishing to pierce a corporate veil. Seminole Boatyard, Inc. v. Christoph, 715 So. 2d 987, 990 (Fla. 4th DCA 1998). Generally, the rule is that the corporate veil will not be pierced absent a showing of improper conduct. Dania Jai-Alai Palace, Inc. v. Sykes,

450 So. 2d 1114, 1121 (Fla. 1984); accord Steinhardt v. Banks, 511 So. 2d 336 (Fla. 4th DCA 1987). Under this standard, it must be shown that the corporation was organized or used to mislead creditors or to perpetrate a fraud upon them. Seminole Boatyard, Inc., 715 So. 2d at 990. Three factors must be proven by a preponderance of the evidence:

> (1) the shareholder dominated and controlled the corporation to such an extent that the corporation's independent existence, was in fact non-existent and the shareholders were in fact alter egos of the corporation; (2) the corporate form must have been used fraudulently or for an improper purpose; and (3) the fraudulent or improper use of the corporate form caused injury to the claimant.

Id.; (citing Dania Jai-Alai Palace, Inc. v. Sykes, 450 So. 2d 1114 (Fla. 1984)). Whether there has been improper conduct is a jury question. Id. However, in order to survive a motion for summary judgment, the party attempting to pierce the corporate veil "must show that genuine issues of fact exist both as to the . . . use of [the corporate entity] as a mere instrumentality and its manipulation for an improper purpose." Reflectone, Inc. v. Farrand Optical Co., Inc., 862 F.2d 841, 845 (11th Cir. 1989).

In this case, the Court finds that disregarding the corporate entity is not justified. While Lovette arguably may have raised genuine issues of material fact as to whether Plath treated Salt Water Adventures as a mere instrumentality, Lovette has not offered any evidence demonstrating that Plath used Salt Water Adventures for any improper purpose. The Court notes that the insurance

policy names Plath as the policy holder, but this alone is insufficient to justify piercing the corporate veil. The Court concludes that Plath and Salt Water Adventures have not been established as alter-egos, and thus Plath will be dismissed from the case.

Accordingly, it is now

**ORDERED**:

1. Defendant Salt Water Adventures's Motion to Dismiss Second Amended Complaint (Doc. #71) is **DENIED** as moot.

2. Defendants Salt Water Adventures' and Happy Hooker II's Amended Motion for Summary Judgment (Doc. #76) is **GRANTED in part and DENIED in part.** The Court grants the Motion to the extent that Plath is dismissed as a defendant in the case, and the Motion is otherwise denied.

**DONE AND ORDERED** at Fort Myers, Florida, this   11th   day of January, 2006.

JOHN E. STEELE
United States District Judge

Copies:
Counsel of record